IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  06-10225-01-WEB |
| | ) | |
| JOEL RODRIGUEZ-CHAVEZ, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**Memorandum and Order**

The one-count Indictment in this case charges defendant Joel Rodriguez-Chavez with making a false declaration in a proceeding before a court, in violation of 18 U.S.C. § 1623.  In essence the indictment charges that defendant knowingly made or certified false statements in a § 2255 motion filed with the court.

The defendant executed a waiver of jury trial and requested a trial to the court.  The Government consented to the waiver and the court approved it after reviewing it with the defendant.  Accordingly, on January 23, 2007, the matter came before the court for a bench trial.  At the conclusion of the evidence, the court gave the parties five days to submit proposed findings of fact and conclusions of law.  Those proposals have now been filed, and the court is prepared to rule.

I. *Indictment*.

The Indictment in this case charges:

> That on or about August 4, 2006, within the District of Kansas and elsewhere, JOEL RODRIGUEZ-CHAVEZ, the defendant knowingly and intentionally declared, certified, verified, and stated, under penalty of perjury, in the format prescribed by Title 28, United States Code, Section 1746, in a proceeding before a court of the United States, that a material matter was true which he knew was not true

and did not believe to be true, to wit: In a Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed of record by the court in District of Kansas Case No. 06-3226-MLB on August 14, 2006; that his court-appointed counsel never spoke to him concerning the crime with which he was charged in U.S. District Court, District of Kansas, Case No. 03-10180-01-MLB, and that his court-appointed counsel made the defendant sign a plea agreement involuntarily, in violation of Title 18, United States Code, Section 1623(a).

Doc. 1.

II. *Findings of Fact.*

The Government presented two witnesses at the trial: Assistant Federal Public Defenders Steve Gradert and Tim Henry. It also introduced certain exhibits from defendant's prior criminal case, and, without objection, asked the court to take judicial notice of and consider as exhibits all of the electronically filed documents from Case No. 03-10180. The defense, for its part, presented the testimony of the defendant, Joel Rodriguez-Chavez.

Much of the relevant background is contained in the record of *United States v. Rodrigues-Chavez,* D. Kan., No. 03-10180-MLB. On October 21, 2003, the defendant was indicted on a charge of being an alien found unlawfully in the United States after a previous deportation, in violation of 8 U.S.C. § 1326(a) & (b)(1). Doc. 1.[1] The defendant was in state custody at the time and did not appear in federal court until March 24, 2004, pursuant to a writ of habeas corpus ad prosequendum. At his initial appearance the defendant was assisted by a translator, Lu Ann Rivera, with Assistant Federal Public Defender John Henderson acting as his counsel. Another Assistant FPD, Steve Gradert, was actually appointed to represent the defendant, but Mr. Gradert was

---

[1] Unless otherwise noted, all docket numbers used hereinafter refer to the prior criminal proceeding, *United States v. Joel Rodriguez-Chavez*, No. 03-10180-01-MLB (U.S. Dist. Ct., D. Kan.).

unavailable and so Mr. Henderson handled the initial appearance. A Magistrate Judge explained the charge to the defendant and examined him concerning his financial status. Court personnel completed a financial affidavit form based on the defendant's responses, and the defendant executed the form. The defendant waived his right to a detention hearing and was remanded to custody. Docs. 3,4,7,8,9.

The following day, March 25, 2004, Mr. Gradert filed an entry of appearance as defendant's counsel. Doc. 5. Also on March 25, 2004, an order of discovery and scheduling was filed by the presiding judge, the Hon. Monti L. Belot. The scheduling order set a status conference/plea hearing for May 17, 2004, and a jury trial for June 1, 2004. Doc. 6.

On March 29, 2004, the court granted an unopposed Government motion to expedite the trial based upon a demand by defendant for a speedy trial under the Interstate Agreement on Detainers Act. Docs. 9, 10. The defendant had made such a demand in a letter on or about October 23, 2003, shortly after his indictment. The motion said it was likely there would be a subsequent request for a continuance, but that an April 20, 2004 trial setting was necessary to comply with the Act. Accordingly, the court re-scheduled the trial for April 20, 2004.

On April 16, 2004, Mr. Gradert filed a motion for continuance asking the court to set a status/plea hearing for April 26, 2004, and continuing the jury trial to a later date to be determined. Doc. 12. The motion noted that counsel "has not had sufficient time to discuss the penalties and facts of the case to determine the necessity of a trial with defendant Rodriguez." The court granted the motion, setting a status conference for April 26 and the trial for May 11, 2004. Doc. 13.

Mr. Rodriguez was brought to the courthouse on April 26, 2004, for a status hearing. Before the scheduled hearing, Mr. Gradert met with the defendant and discussed the case. The details of

the discussion are not entirely clear, but the evidence suggests Mr. Gradert had received at least the outlines of a plea offer from the Government and briefly discussed with the defendant the possibility of a plea.   The defendant was resistant to the idea, in part because he had not had sufficient opportunity to discuss the matter with Mr. Gradert, who had been unusually busy during this period with several jury trials in addition to all of his other duties.   At counsel's request the status/plea hearing was set over to May 3, 2004, to give counsel an opportunity to talk to the defendant.

Mr. Gradert, together with Ms. Rivera, the interpreter, subsequently went to see the defendant at a detention facility in Butler County.   Mr. Gradert explained the situation to the defendant in detail, including the elements of the offense, any potential defenses, the chances of winning, and potential sentencing ramifications.  He also explained the amount of time the defendant was likely facing given his extensive history of D.U.I. convictions, including one or more prior felony D.U.I.'s.  Mr. Gradert attempted to discuss a proposed plea agreement with the defendant, but the defendant was not very receptive.  He was upset about the D.U.I.'s having an impact on his current case, which he felt was unfair.  He also "vented" to Ms. Rivera about his general situation and the plight of his family.  Mr. Gradert recommended that the defendant enter into a plea agreement, but the defendant was not inclined to do so.

On or about May 3, 2004, another status hearing was apparently held (it is unclear whether this was done formally or informally), during which Mr. Rodriguez or Mr. Gradert may have informed the court that the defendant wanted to try and get a new lawyer.  Judge Belot set the matter over for May 17, 2004. Sometime after the May 3rd hearing, Assistant FPD Tim Henry volunteered to take over the case from Mr. Gradert due to Mr. Gradert's unusually busy schedule during this period.  Such a procedure is sometimes used by the Public Defender's office to ensure that a

4

defendant has adequate time to consult with counsel.  Mr. Gradert agreed, and handed the case off

to Mr. Henry.  Mr. Henry began working on the case and discovered that the defendant might be

facing a lesser guideline range than previously thought due to recent case law suggesting that a prior

D.U.I. might not qualify for an enhancement as a "crime of violence" or an "aggravated felony," and

that it might be a basis upon which to challenge the prior order of deportation.  On May 13, 2004,

Mr. Henry and an interpreter went to see the defendant, who was still upset about the time he was

facing but was very happy to hear of the possibility of a lesser sentence.  Mr. Henry subsequently

negotiated a modified plea agreement with the Government that allowed for a conditional plea of

guilty preserving the defendant's right to appeal any issues relating to his prior felony D.U.I.

conviction and any upward departure in sentencing.

　　　　At some point prior to the May 17, 2004, hearing, Mr. Henry met with the defendant and

they reviewed a petition to plead guilty and a plea agreement.  The defendant was satisfied with the

conditional plea agreement.  Represented by Mr. Henry, the defendant subsequently appeared before

Judge Belot for a change-of-plea hearing pursuant to Rule 11.  *See* Govt. Exh. 4.  At the outset of

the hearing the defendant took an oath to tell the truth.  During the course of the hearing, Mr.

Rodriguez told the court, through the interpreter, that he had had sufficient time to discuss the case

with Mr. Henry and was satisfied with his handling of the case.  The judge conducted a thorough

hearing to determine whether the defendant's plea was knowing and voluntary.  Among other things,

the judge explained the charge, the rights defendant would be giving up if he decided to plead guilty,

the operation of the sentencing guidelines, and the plea agreement and its effect.  When the judge

questioned the defendant about each of these matters the defendant told the judge he understood

them.  The judge specifically reviewed with the defendant a provision in the plea agreement giving

the Government the right to seek an upward departure in the sentence, and it was explained to the defendant that such a motion might be made based upon the defendant's extensive history of D.U.I.'s.  The defendant assured the court that it was his decision to plead guilty and not Mr. Henry's or Ms. Rivera's.  He told the court he had reviewed the petition to plead guilty with Mr. Henry and the interpreter and knew he was signing that document under oath.  The petition signed by the defendant included provisions stating that he was satisfied with the advice and help of his lawyer, that he was pleading guilty because he was guilty, and that he was doing so freely and voluntarily.  Judge Belot accepted the plea of guilty after finding that it was made freely and voluntarily, and the matter was scheduled for sentencing.

Prior to the sentencing hearing, the Government filed a motion for upward departure asking the court to impose a sentence of 87 months imprisonment rather than a sentence within the guideline range of 24 to 30 months.  Among other things, the Government asserted that the defendant had at least 11 prior D.U.I. convictions since 1992, including three felony convictions, as well as other convictions showing a threat to public safety.  Mr. Henry, on defendant's behalf, vigorously challenged the motion in several briefs filed with the court.[2]

On September 22, 2004, Judge Belot filed and sent to counsel copies of a letter he received from the defendant.  Doc. 22-2.  The letter, which is hand-written in fluent English, was signed by the defendant.  The handwriting in the body of the letter appears different than the defendant's signature, however, indicating the defendant probably did not do the actual writing.  At the same time, the letter is written in the first-person and contains extensive details about the defendant and

_____

[2] The record shows that Mr. Henry filed a formal Entry of Appearance as defendant's lawyer on August 3, 2004. Doc. 17.  Up until that point, Mr. Gradert was listed as the defendant's only counsel of record on the court's electronic filing system.

his case, which shows that the defendant was in fact the original source of the information. In the letter, which was essentially a plea for leniency, the defendant represented that he had been working in the United States for over 20 years. The letter included the following:

> My first attorney never had time to present to me any paper[ ].[3] Unfortunately, by the time my case was given to Timothy Henry (as my counsel) I was already going to plead guilty. I am very grateful for Mr. Henry because he has done a[ll] that he could for me in my ca[se] and he is an excellent attorney [as] well as a great human being.

Doc. 22-2. Along with the letter, the defendant included business cards with his name showing he had previously worked in various jobs and was a member of the Laborer's International Union of North America.

On October 7, 2004, the defendant appeared with Mr. Henry for sentencing. After hearing arguments, Judge Belot imposed an upward departure to a sentence of 51 months' imprisonment, and judgment was entered accordingly. At the sentencing hearing the defendant again represented that he was satisfied with how Mr. Henry had handled his case. Mr. Henry subsequently filed and pursued a direct appeal on the defendant's behalf, but on December 5, 2005, the Tenth Circuit Court of Appeals affirmed the judgment of the district court. Doc. 38.

On August 14, 2006, the defendant filed a motion under 28 U.S.C. § 2255 to vacate his sentence. Doc. 43. This motion is the basis for the instant prosecution. It was type-written in English on a standard form for § 2255 motions. Under "Ground One" for the motion the following was typed: "INEFFECTIVE ASSISTANCE OF COUNSEL," with the following as supporting facts: "COUNSEL NEVER SPOKE TO MOVANT CONCERNING THE INSTANT OFFENSE AND

[3] One or two of the edges of this document are not legible on the version that was scanned and filed electronically.

MADE MOVANT SIGN HIS PLEA AGREEMENT INVOLUNTAIRLY [sic].   COUNSEL RESIGNED FROM REPRESENTING MOVANT [Before] SIGNING OF PLEA."  Doc. 43 at 3. Under a subsequent portion of the form asking for the name of the attorney who represented movant at various stages of the proceeding, the person typing the form listed Mr. Gradert as the attorney at the preliminary hearing, arraignment and plea, and at trial, while listing Mr. Henry as the attorney for sentencing and on appeal.  At the end of the form was a pre-printed declaration stating: "I declare under penalty of perjury that the foregoing is true and correct."  The defendant printed his signature on the signature line underneath this provision.

On September 1, 2006, a brief in support of defendant's motion was filed with the court. Doc. 44.  The brief was nine pages long and was typewritten in English.  Under a provision stating the facts of the claim for ineffective assistance of counsel, the brief stated:

> The petitioner's counsel was ineffective for several reasons.  The petitioner's counsel never effectively spoke to the petitioner in regards to the instant offense, and when he did, he totally ignored the facts that the petitioner told him in regards to the petitioner's prior sentence that was used to enhance his sentence.  Counsel urged the petitioner to sign a plea-agreement that the petitioner did not fully understand.  When the petitioner refused to sign the plea-agreement, the petitioner's counsel resigned from defending the petitioner.

Doc. 44 at 2.  In another section the brief complained that counsel had "failed to request an evidentiary hearing at sentencing" to make the Government show that defendant's prior DUI was a crime of violence warranting a deportation.  *Id*. at 4.  It further argued that "petitioner's counsel's actions" caused prejudice "because of his total disregard of the petitioner's request and the obvious assumption that the petitioner's prior DUI was not a crime of violence and did not warrant a deportation."  *Id*.  The brief was signed by the defendant.

On October 3, 2006, Judge Belot entered an order denying the defendant's § 2255 motion.

In the order Judge Belot logically assumed that the "counsel" about whom defendant was complaining was Mr. Henry, given that Mr. Henry had represented the defendant at the guilty plea and at sentencing.  Among other things the order stated: "Defendant's contention that Mr. Henry never spoke with him regarding his case and that he forced defendant to sign his plea agreement is patently false."  Doc. 45 at 2.  The order noted the numerous prior representations by the defendant that he was satisfied with Mr. Henry's assistance, and it also noted his assurances to the court at the plea hearing that he was pleading guilty freely and voluntarily.

In his testimony to this court in the instant case, defendant Joel Rodriguez-Chavez testified in Spanish through the use of an interpreter.  He testified that he had eight years of education growing up in Mexico.  He is now 39 years old and has been in the United States, working in various construction or other jobs, for approximately 27 years.  He testified that he speaks "a little" English but can read only a "very little bit" of it.  He said that after he was charged with illegal re-entry in Judge Belot's case, Steve Gradert talked to him one or two times but only very briefly because Mr. Gradert was very busy.  Defendant testified that at the hearing on May 3rd, he told Judge Belot he needed to consult with an attorney who would be paid because Mr. Gradert had no time to see him.  According to defendant, Judge Belot told him he could have two weeks to get an attorney, and that he needed to come to court on May 17th either to plead guilty or to go to trial.  Defendant said that he thereafter only had contact with Mr. Henry, who came to see him at Butler County and who was very helpful.  Defendant said Mr. Henry negotiated a plea agreement that would allow him to appeal, and that he was very happy with Mr. Henry and the job he did except that he "had arrived too late" in the case.

Defendant testified that after his direct appeal was denied, he was in federal prison in

9

Pennsylvania when he spoke to another inmate about filing a § 2255 motion.  Defendant claimed he did not know the other inmate's name, but that he was one of the guys who frequently went to the library and helped other people with their motions.  Defendant testified this other inmate prepared the § 2255 motion.  Defendant said that the inmate did not speak Spanish but he [the inmate] had access to all of the records in the case via computer.  Defendant gave contradictory testimony about what instructions or statements he made to the inmate preparing the motion.  At some point defendant admitted he gave the inmate some information about the case, including that he had not had sufficient time with one of the attorneys before the plea and that the plea was "pressured."  Otherwise, defendant claimed he did not tell the inmate what to put in the motion and that the inmate knew what to write by looking at the books and the record.  Defendant testified that although he signed the § 2255 motion where the inmate showed him, he did not (and could not) read the motion and did not really know what it said.   According to the defendant, the inmate just told him it would help to reduce his time.  Defendant testified he was desperate and did not know anything about the law, so he signed the motion.  Although defendant's testimony at times was self-contradictory, on the whole it showed that defendant understood the motion would be submitted to the court and that he knew he was under a legal obligation to tell the truth in the motion.  Defendant claimed, however, that he did not tell any lies to the inmate who did the motion and that he did not intend for the person to lie.

III.  *Elements of the Offense Charged*.

The charge under 18 U.S.C. § 1623(a) requires the Government to prove the following essential elements beyond a reasonable doubt:

**<u>First</u>**: the defendant made a certification or statement under penalty of perjury in a

proceeding before or ancillary to a court of the United States, namely, in a Motion to Vacate, Set

Aside or Correct a Sentence in District of Kansas Case No. 06-3226-MLB, as charged;

       ***Second***: such statement was false in one or more of the respects charged;

       ***Third***: the defendant knew such statement was false when defendant made it; and

       ***Fourth***: the false statement was material to the court proceeding.

*Cf. United States v. Clifton*, 406 F.3d 1173, 1177 (10th Cir. 2005).

       With respect to the first essential element, the evidence is clear that although defendant did

not actually write the § 2255 motion, he did sign the certification on it, as defendant admitted in his

testimony.   The certification declared under penalty of perjury that the foregoing [i.e., the

information in the motion] was true and correct.  The statements in the motion were thus made under

penalty of perjury as contemplated by 28 U.S.C. § 1746.  Additionally, the circumstantial evidence

-- including defendant's long presence in the United States and his extensive prior exposure to the

criminal justice system -- lead the court to conclude that defendant understood the certification.  The

court finds the defendant knew he was representing to the court that the statements in the motion

were true and correct and that he understood he was subject to punishment if he knowingly made

false statements.  The court further finds the defendant is responsible for the filing of the motion in

the court proceeding.  It is clear to the court that defendant gave his approval to the other inmate to

write the motion and to send it to the court on his behalf.  Thus (leaving aside for a moment the other

essential elements of the offense) the mere fact that the defendant did not personally write the

motion or file it with the court does not relieve him of responsibility for such acts.  *Cf.* 18 U.S.C.

§ 2 (defendant responsible as a principal if he knowingly aids and abets an offense or willfully

causes the act to be done).  In sum, the court finds the first essential element above has been shown

beyond a reasonable doubt.  The defendant made a certification under penalty of perjury in a court proceeding, as alleged in Count 1.[4]  *See United States v. Johnson*, 325 F.3d 205, 210 (4th Cir. 2003) (the filing of a habeas petition with the court is a "proceeding before ... any  court" within the meaning of § 1623(a)).

The second essential element is that the statement was false in one or more of the respects charged.  In the § 2255 motion it was stated that defendant's "counsel never spoke to movant concerning the instant offense and made movant sign his plea agreement [involuntarily]."  Doc. 43. The evidence suggests that this reference to "counsel" was intended to mean Mr. Gradert rather than Mr. Henry.[5]  In any event, the evidence shows the statement was false.  Mr. Gradert was unusually busy during this time and spent a limited amount of time discussing the case with the defendant, but it is false to say that he never spoke to defendant concerning the offense.  He clearly did speak to him about the offense, including during an extensive meeting in Butler County prior to the May 3, 2004 status hearing.  Likewise, the assertion that Mr. Gradert [or Mr. Henry for that matter] "made movant sign his plea agreement involuntarily" is also a false statement, given that defendant was represented by Mr. Henry when he signed the plea agreement and the record shows clearly that defendant voluntarily entered the plea agreement rather than proceed to trial.  Among other things,

---

[4] Pursuant to clerk's office policy, when the § 2255 motion was filed it was assigned a separate civil case number – No. 06-3226-MLB –  although the document was maintained as part of the record in the criminal case No.  03-10180-01-MLB.

[5] The reference in the § 2255 motion to counsel who "resigned from representing movant before signing of plea," and the reference in the § 2255 brief to the petitioner's counsel resigning after defendant refused to sign a plea agreement, are both strong indications that the "counsel" referred to in the motion was Mr. Gradert.  This conclusion is bolstered by the letter defendant sent to Judge Belot before sentencing, in which he said he was satisfied with Mr. Henry but complained about a lack of assistance from his first lawyer.

defendant represented in his Petition to Plead Guilty before Judge Belot that he had had sufficient time to discuss the case with Mr. Henry, that he was satisfied with Mr. Henry's representation, that he understood the plea agreement, that the plea agreement was not the result of duress or coercion, and that he was entering into the plea of guilty freely and voluntarily. Govt. Exh. 3 at 7. Moreover, at the Rule 11 hearing defendant took an oath stating that the representations in his Petition were true, and he proceeded to make similar representations directly to Judge Belot while under oath at the Rule 11 hearing. In sum, the court finds the Government has shown beyond a reasonable doubt that these two representations in the § 2255 motion were false statements.

The third essential element is that the Government must show beyond a reasonable doubt that defendant knew these statements were false when he certified them and submitted them to the court. The defendant claims he did not know the statements were false because he did not even know the contents of the § 2255 motion when he signed it. This assertion, like other aspects of the defendant's testimony, is simply not credible. As an initial matter, defendant admits he has been in the United States for over 20 years and that he speaks "a little" English. It is highly improbable that a relatively young person such as the defendant could spend that much time in this country without being able to speak and understand enough spoken English to communicate at a basic level – including at a level sufficient to communicate the two statements at issue in the § 2255 motion. Defendant's attempt to minimize his understanding of spoken English is all the more improbable given his background of working at various jobs in the United States and his extensive history of exposure to this country's criminal justice system. Moreover, in this day and age an inmate at any U.S. federal prison can likely easily locate a number of fellow inmates who can speak both Spanish and English. The evidence bears this fact out. When defendant was incarcerated and awaiting

13

sentencing in Case No. 03-10180, he obtained someone to write a letter to the court on his behalf, in English – a letter that was obviously based on information provided directly by the defendant, and which included a complaint that his "first attorney" did not have time to help before Mr. Henry took over.  Doc. 22-2.  On March 30, 2006, while defendant was serving his sentence at U.S.P. Canaan in Pennsylvania, he sent another letter to Judge Belot, this one type-written in English and signed by defendant.  Doc. 41-2.  Although there is no evidence that the defendant himself wrote this letter either, it too contains numerous details that clearly were provided to the writer by the defendant. It is clear to the court that the defendant made a similar arrangement on his § 2255 motion. Whatever the precise level of defendant's English comprehension, the court has no doubt whatsoever that he was a source of information for the § 2255 motion.  And taking all of the evidence as a whole, the court also has no doubt that defendant was able to communicate with the inmate who wrote the § 2255 motion,  even if the precise mechanism of that communication is not shown by the evidence.   The court is mindful it must chart a course "between the permissible inferences [the court] may draw from the evidence before it and mere speculation,..." *United States v. Truong*, 425 F.3d 1282, 1288 (10th Cir. 2005).   Where issues of intent or knowledge are concerned, however, direct evidence is seldom available, and the Government can prove such matters by circumstantial evidence.  *See United States v. Magleby*, 241 F.3d 1306, 1312 (10th Cir. 2001).  "Thus, even when a defendant, as here, denies having the requisite intent, [the factfinder] may disbelieve the defendant if [his] words and acts in the light of all the circumstances make [his] explanation seem improbable."  *Wingfield v. Massie*, 122 F.3d 1329, 1333 (10th Cir. 1997). Defendant's testimony here that he lacked any knowledge about what the motion said is not credible. Based on all of the evidence -- including the defendant's extensive history in the United States, his

14

history of working in this country, his extensive exposure to the criminal justice system, his prior letter to the court complaining about Mr. Gradert, his history of obtaining individuals to write his requests to the court, and the admissions he made on the stand while testifying -- the court concludes beyond a reasonable doubt that he knew when he certified the motion that it said his counsel had never talked to him and had made him sign a plea agreement involuntarily.  The defendant also undoubtedly knew at the time that these representations were false.  He knew Mr. Gradert had spoken to him concerning the offense, and he knew that Mr. Gradert never made him sign any plea agreement.  Defendant was fully aware that Mr. Henry had negotiated a plea agreement on his behalf, that he was satisfied with the agreement negotiated by Mr. Henry, and that he entered into the plea agreement voluntarily, as he represented under oath to Judge Belot at the plea hearing.

The fourth essential element of the offense is that the statements must be material.  The Government has met its burden as to this element because the statements are such that they would have a natural tendency to influence, and were capable of influencing, the court's decision on the § 2255 motion.  *United States v. Brown*, 459 F.3d 509 (5th Cir. 2006).

IV.  *Conclusion*.

The court finds the defendant Joel Rodriguez-Chavez GUILTY of the offense charged in Count 1 of the Indictment.  The court hereby directs the Probation Office to prepare a Presentence Report.  Sentencing is set for April 23, 2007 at 10:30 a.m.

IT IS SO ORDERED this  _2nd__  Day of February, 2006, at Wichita, Ks.

s/Wesley E. Brown
Wesley E. Brown
U.S. Senior District Judge

15